PRISCILLA M. FLOYD, PRISCILLA M. FLOYD, Administratrix of the Estate of JAMES KENNETH FLOYD, Deceased, and CHRISTIAN ETHAN WALTER FLOYD, by his Guardian Ad Litem, ROBERT V. KNOTT, Plaintiffs v. INTEGON GENERAL INSURANCE CORPORATION, Defendant

No. COA01-1072

(Filed 20 August 2002)

1. **Insurance— automobile—simultaneous use of two vehicles—amount of coverage**

   The Financial Responsibility Act requires all motor vehicle liability policies to provide minimum liability coverages for each insured vehicle being "used" by the insured at the time of an accident, and the Act does not limit an insured's "use" of insured vehicles to one at a time. N.C.G.S. § 20-279.21(b)(2).

2. **Insurance— automobile—towing truck from ditch—use of both vehicles—double coverage**

   The amount of liability coverage provided by the insured's policy for an accident that occurred when an oncoming vehicle struck insured's car while the car blocked a lane of traffic as the insured attempted to pull his disabled truck from a ditch was the total of the per person and per accident coverages for each of insured's two vehicles because (1) the insured was "using" the disabled truck as well as the car at the time of the accident even

though the truck was not struck and was not then being driven or otherwise operated; and (2) there was a causal connection between insured's use of the disabled truck and the accident since insured's car would not have been parked across a lane of traffic and would not have been struck had the insured not been attempting to attach and tow the disabled truck.

Appeal by defendant from order entered 13 June 2001 by Judge William C. Gore, Jr., in Superior Court, Scotland County. Heard in the Court of Appeals 5 June 2002.

*Gordon, Horne, Hicks and Floyd, P.A., by William P. Floyd, Jr., for the plaintiffs-appellees.*

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by A. David Bock, for the defendant-appellant.*

WYNN, Judge.

This appeal presents us with two narrow questions of law: (1) Can an insured under a motor vehicle liability policy in North Carolina "use" more than one insured vehicle at a given time? and (2) Does North Carolina's Financial Responsibility Act, embodied in Article 9A of Chapter 20 in the General Statutes, N.C. Gen. Stat. §§ 20-279.1 *et seq.* (2001), prevent motor vehicle liability insurers from placing limits on their liability regardless of the number of insureds or insured vehicles involved, or the number of claims made? Based on our existing case law, we are compelled to conclude as a matter of law that: (1) an insured may "use" more than one insured motor vehicle at any given time, as that term is used in the Financial Responsibility Act, *see* N.C. Gen. Stat. § 20-279.21 (2001); and (2) the Financial Responsibility Act requires motor vehicle liability insurers to provide minimum liability coverages with respect to *each* insured motor vehicle designated in the policy, insuring against loss arising out of the "use" of such vehicles by the insured(s).

On 22 November 1996, Jerry McNeill was driving his 1977 GMC truck when it became disabled. He pushed the disabled truck completely off the roadway and into a small ditch along the shoulder of the southbound lane of the road. In the early evening of the following day, Mr. McNeill and his wife, Mary McNeill, returned to the disabled GMC truck, this time operating a 1973 Chevrolet. The McNeills then attempted to move the disabled GMC truck with the Chevrolet using a chain and steel pipe. In doing so, Mr. McNeill situated the Chevrolet

**FLOYD v. INTEGON GEN. INS. CORP.**

[152 N.C. App. 445 (2002)]

across the southbound lane of traffic, and initially hooked the two vehicles together but the chain became unhooked from the GMC truck; he then attempted to back the Chevrolet closer to the GMC truck to re-attach it.

In the process of doing so, Mr. McNeill noticed vehicle headlights approaching in the distance in the southbound lane of travel; he therefore exited from the Chevrolet vehicle and walked with a flashlight toward the approaching headlights in an attempt to alert the approaching vehicle that the southbound lane was blocked by the Chevrolet vehicle.

James Kenneth Floyd drove the approaching vehicle, a 1983 Pontiac, in which his wife (Priscilla Floyd) and minor son (Christian Ethan Walter Floyd) rode as passengers. Despite Mr. McNeill's attempts to warn the Floyds, the Floyd vehicle collided in the southbound lane of the roadway with Mr. McNeill's Chevrolet, killing Mr. Floyd and injuring his wife and son.

At the time of the accident, both of the McNeill vehicles—the 1977 GMC truck and the 1973 Chevrolet—were specifically designated as insured vehicles under a motor vehicle liability policy issued by defendant-appellant Integon General Insurance Corporation to Mr. McNeill. The insurance policy provided for bodily injury liability up to $25,000 per person and $50,000 per accident. Additionally, the policy provided as follows:

> The limit of liability shown in the Declarations for each person for Bodily Injury Liability Coverage is our maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of services or death, sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident. . . . This is the most we will pay as a result of any one auto accident regardless of the number of:
>
> 1. Insured's
>
> 2. Claims made;
>
> 3. Vehicles or premiums shown in the Declarations, or
>
> 4. Vehicles involved in the auto accident.

In September 1999, plaintiffs filed a declaratory judgment action seeking an adjudication of the parties' relative rights, liabilities and obligations. Plaintiffs contended that both the Chevrolet and the GMC truck were in "use" at the time of the accident, and accordingly requested that the trial court declare that the total amount of liability coverage provided by Integon's policy was $50,000 per person and $100,000 per accident, i.e. $25,000 per person and $50,000 per accident for *each* of the McNeills' insured vehicles. Defendant answered and the parties subsequently filed cross-motions for summary judgment, stipulating to all material facts.

On 13 June 2001, Superior Court Judge William C. Gore, Jr., entered an order denying defendant's summary judgment motion and granting summary judgment in favor of plaintiffs, declaring that Integon's policy provided coverage for the 23 November 1996 accident in the amount of $25,000 per person and $50,000 per accident for *each* of the McNeills' insured vehicles. Defendant appeals; we affirm.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that a party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (2001). Furthermore, summary judgment may be appropriate in a declaratory judgment action, under the same rules applicable in other actions. *See Meachan v. Board of Education*, 47 N.C. App. 271, 267 S.E.2d 349 (1980). As noted above, in the instant case the parties stipulated to all material facts, leaving only questions of law; accordingly, summary judgment was proper in this case. We need only determine whether summary judgment was properly entered in plaintiffs' favor, or conversely should have been entered in favor of defendant.

The parties stipulated before the trial court that the Floyds' Pontiac and the McNeills' Chevrolet were the only vehicles involved in the collision; neither vehicle struck the disabled GMC truck. Additionally, the parties stipulated that Mary McNeill neither drove nor parked the Chevrolet, nor was she involved in the attempts to link the GMC truck to the Chevrolet.

Plaintiffs contend that Mr. McNeill was "using" both the 1977 GMC truck *and* the 1973 Chevrolet at the time of the accident. Furthermore, plaintiffs contend that G.S. § 20-279.21 requires defendant to provide minimum liability coverage for *each* insured vehicle

**FLOYD v. INTEGON GEN. INS. CORP.**

[152 N.C. App. 445 (2002)]

involved in the accident, effectively doubling defendant's liability coverage under the policy, regardless of any contrary language in defendant's policy.

Defendant's argument on appeal is twofold: (1) There is no basis in law for concluding that Jerry McNeill was "using" more than one vehicle at the time of the accident, and (2) even assuming *arguendo* that Mr. McNeill was "using" both the 1977 GMC truck and the 1973 Chevrolet at the time of the accident, the policy's express "Limit of Liability" language places a $25,000 per person, $50,000 per accident upper limit on defendant's coverage liability. Based on our case law and the plain language of the Financial Responsibility Act, we must disagree.

The Financial Responsibility Act requires all motor vehicle liability policies issued by insurers in North Carolina to "designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is to be granted[.]" G.S. § 20-279.21(b)(1). Additionally, such policies must:

> insure the person named therein . . . using any such motor vehicle *or motor vehicles* . . . against loss from the liability imposed by law for damages arising out of the . . . use of such motor vehicle *or motor vehicles* . . . subject to limits exclusive of interest and costs, *with respect to each such motor vehicle*, as follows: thirty thousand dollars ($30,000) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, sixty thousand dollars ($60,000) because of bodily injury to or death of two or more persons in any one accident[.]

G.S. § 20-279.21(b)(2) (emphasis added).[1] These provisions are written into every motor vehicle liability policy issued in North Carolina as a matter of law, *see, e.g., Wilmoth v. State Farm Mut. Auto Ins. Co.*, 127 N.C. App. 260, 488 S.E.2d 628, *disc. review denied*, 347 N.C. 410, 494 S.E.2d 601 (1997), and the terms of the statute prevail over any conflicting policy provisions. *See, e.g., State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 78 N.C. App. 542, 337 S.E.2d 866 (1985) ("*State Capital I*"), *affirmed*, 318 N.C. 534, 350 S.E.2d 66 (1986) ("*State Capital II*").

---

1. At the time of the accident at issue herein, G.S. § 20-279.21(b)(2) provided for minimum bodily injury liability limits of $25,000 per person and $50,000 per accident; these limits were changed to the current limits of $30,000 per person and $60,000 per accident by 1999 N.C. Sess. Laws ch. 228, § 4 (effective 1 July 2000).

**[1]** Under its plain language, therefore, at the time of the accident herein the Financial Responsibility Act required all motor vehicle liability policies issued by insurers in North Carolina to provide the insured therein with liability coverage of at least $25,000 per person and $50,000 per accident *for each insured vehicle* being "used" by the insured at the time of the accident. Such a requirement must therefore be written into every motor vehicle liability policy issued in this state as a matter of law, *see Wilmoth*, regardless of any conflicting provisions in the insurance policy. *See State Capital I.* G.S. § 20-279.21(b)(2) does not limit an insured's "use" of insured motor vehicles to one at a time, and we decline to read such a restriction into the statute.[2] We must therefore determine in the instant case whether, as a matter of law, Mr. McNeill was "using" the insured GMC truck at the time of the accident, such that the accident arose out of the "use" of said truck.[3]

In *State Capital II*, our Supreme Court affirmed this Court's decision in *State Capital I*, recognizing that "provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." 318 N.C. at 538, 350 S.E.2d at 68. The Court stated that "the test for determining whether an automobile liability policy provides coverage for an accident is not whether the automobile was a proximate cause of the accident. Instead, the test is whether there is a causal connection between the use of the automobile and the accident." *Id.* at 539-40, 350 S.E.2d at 69.

In *Nationwide Mutual Insurance Company v. Davis*, 118 N.C. App. 494, 455 S.E.2d 892, *disc. review denied*, 341 N.C. 420, 461 S.E.2d 759 (1995), the parties stipulated that:

> On 15 August 1990, six-year-old Tiffany Diane Matthews, a pedestrian, was struck by a truck operated by Michael Sain. Immediately before the accident, Tiffany had been a passenger in a van driven by defendant Artie Davis, her grandmother. Ms. Davis had parked the van near the Cat Square Superette and

---

2. We note that, with respect to uninsured motorist (UM) coverage, G.S. § 20-279.21(b)(3) specifically prohibits "any combination of coverage within a policy . . . to determine the total amount of coverage available" where UM coverage "is provided on more than one vehicle insured on the same policy[.]" However, such a limitation is notably absent from G.S. § 20-279.21(b)(2).

3. The parties do not dispute that the accident arose out of Mr. McNeill's ownership, maintenance or use of the 1973 Chevrolet, leaving only the question whether the accident also arose out of his simultaneous "use" of the GMC truck.

turned off the motor. Ms. Davis exited the van and started walking toward the Superette. Tiffany then called to Ms. Davis and asked her if she could come in and get some ice cream. When Ms. Davis told her that she could, Tiffany got out of the passenger side of the van, walked around the van, and walked into the one-lane roadway separating the van and the store. Tiffany was then struck by the truck operated by Mr. Sain.

*Davis*, 118 N.C. App. at 495-96, 455 S.E.2d at 893. At issue in *Davis* was whether the Davis' van was in "use" at the time of the accident. This Court construed the term "use" liberally, rejecting the insurer's contention that the van was not in "use" at the time of the accident since Ms. Davis was not driving or otherwise operating it at the time of the accident. This Court concluded that the van was in "use" at the time of the accident, as "Ms. Davis was purposefully using the van as a means of transportation to get to her destination, the Cat Square Superette. The van was [therefore] instrumental in the trip to the Superette where the accident happened." *Id.* at 498, 455 S.E.2d at 895. This Court also found a "causal connection" between Ms. Davis' use of the van and the accident, *see State Capital II*, and concluded that the Davis' auto liability policy provided coverage. *See Davis*, 118 N.C. App. at 498, 455 S.E.2d at 895.

[2] Likewise, in the instant case we conclude that Mr. McNeill was using the GMC truck at the time of the accident; furthermore, there is a causal connection between his use of the truck and the accident giving rise to this action. The parties stipulated that Mr. McNeill's intention on the afternoon of 23 November 1996 was to tow the GMC truck home with the Chevrolet using a chain and steel pipe. Additionally, Mr. McNeill attached the two vehicles at some time prior to the accident, but the chain became unhooked from the GMC truck. Mr. McNeill was then attempting to re-attach the vehicles using the chain when the Floyds' car approached and the accident occurred. Under these circumstances and our courts' liberal construction of the term "use," we conclude as a matter of law that Mr. McNeill was using the GMC truck at the time of the accident even though the GMC was not struck nor was it being driven or otherwise operated at the time of the accident. *See Davis*; *see also Whisnant v. Aetna Cas. Ins. Co.*, 264 N.C. 303, 141 S.E.2d 502 (1965) (holding that the plaintiff, who was injured while pushing his disabled vehicle off the road, was using the vehicle at the time of the accident); *Leonard v. N.C. Farm Bureau Mut. Ins. Co.*, 104 N.C. App. 665, 411 S.E.2d 178 (1991) (holding that the plaintiff, who was injured while changing a flat tire, was using the

vehicle at the time he was injured), *rev'd on other grounds*, 332 N.C. 656, 423 S.E.2d 71 (1992).

Furthermore, we conclude as a matter of law that there was a causal connection between Mr. McNeill's use of the GMC truck and the accident, thereby giving rise to coverage under his motor vehicle liability policy issued by Integon. *See id.* Mr. McNeill's Chevrolet would not have been parked across the southbound lane of traffic and would not have been struck had he not been attempting to attach and tow the disabled GMC truck. Accordingly, the trial court's 13 June 2001 order awarding plaintiffs summary judgment is,

Affirmed.

Judges HUNTER and THOMAS concur.