DIANE GEITNER, Individually and derivatively on behalf of SOUTHERN HOSIERY MILLS, INCORPORATED, and JACQUES GEITNER, Individually and derivatively on behalf of SOUTHERN HOSIERY MILLS, INCORPORATED, Plaintiffs v. MARTHA MULLINS, VIRGINIA SHEHAN, PETER MENZIES, MARTHA MULLINS as Administratix of the ESTATE OF PHILLIP A. MULLINS, III, and SOUTHERN HOSIERY MILLS, INCORPORATED, Defendants

No. COA06-547

(Filed 17 April 2007)

1. **Corporations; Declaratory Judgments— votes—conflict of interest transaction—familial relationship**

   The trial court did not err by denying plaintiffs' motion for summary judgment and granting defendants' motion for summary judgment regarding plaintiffs' declaratory judgment action seeking to declare that each of plaintiffs' votes counted and will count on matters related to Phillip Mullins and Virginia Shehan in a closely held family corporation, and that none of defendants' votes counted or will count in such matters, because: (1) defendants' past and future votes as directors are not voidable as conflict of interest transactions under N.C.G.S. § 55-8-31 solely based on their familial relationship with Phillip Mullins and Virginia Shehan; (2) N.C.G.S. § 55-8-31 provides no mechanism to challenge the actions of a director discharging his duties as a director, including voting on electing officers and setting officer compensation, since none of these actions by the board of directors is a transaction with the corporation; and (3) plaintiffs failed to argue any of defendants' votes or actions violated N.C.G.S. § 55-8-30 which is the proper statutory mechanism to challenge the director's action.

2. **Corporations— derivative action—action against estate to recover unauthorized payments made before death—estate closed**

   The trial court did not err by granting defendants' motion for summary judgment regarding plaintiffs' derivative action on behalf of a closely held family corporation against an estate to recover unauthorized payments made to Phillip Mullins before his death, because: (1) the trial court found the estate was properly closed when plaintiffs' complaint was filed; and (2) the Court of Appeals affirmed the superior court's order, which affirmed the clerk of superior court's order setting aside the ex parte order reopening the estate.

   Judge GEER concurring in result only in separate opinion.

GEITNER v. MULLINS

[182 N.C. App. 585 (2007)]

Appeal by plaintiffs from order entered 20 April 2005 by Judge Nathaniel J. Poovey and orders entered 31 October 2005 and 29 December 2005 by Judge Timothy S. Kincaid in Catawba County Superior Court. Heard in the Court of Appeals 7 February 2007.

*Robert J. King, III, and Janice L. Kopec, for plaintiffs-appellants.*

*McDaniel & Anderson, LLP, by L. Bruce McDaniel, for defendant-appellees Martha Mullins, The Estate of Phillip A. Mullins, III, Virginia Shehan, and Peter Menzies.*

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot and Scott W. Gaylord, for defendant-appellee Southern Hosiery Mills, Incorporated.*

TYSON, Judge.

Diane and Jacques Geitner, individually, and on behalf of Southern Hosiery Mills, Incorporated ("SHM") (collectively, "plaintiffs") appeal from orders entered denying plaintiffs' motions for summary judgment and granting Martha Mullins, individually and as executrix of the Estate of Phillip A. Mullins, III ("the Estate"), Virginia Shehan, Peter Menzies, and SHM's (collectively, "defendants") motions for summary judgment regarding plaintiffs' declaratory judgment action and derivative action. We affirm.

## I. Background

SHM is a closely held corporation founded in approximately 1945 by Balfour Menzies ("Menzies"), P.G. Menzies, and W.B. Shuford. Menzies obtained ownership of virtually all of SHM's stock. Menzies had two daughters, Diane Geitner ("Diane"), and Martha Mullins ("Martha") and transferred most of his stock in SHM, in equal parts, to them.

Diane married Jacques Geitner. Diane is an officer, director, and shareholder of SHM. Jacques Geitner is a director and shareholder of SHM. Plaintiffs own or are the beneficiaries of approximately 49% of SHM's common stock.

Martha married Phillip A. Mullins, III ("Phillip Mullins"). Before his death, Phillip Mullins served as a director and the president of SHM. Martha and her children, including Virginia Shehan and Peter Menzies, own or are beneficiaries of approximately 49% of SHM's

common stock. Martha, Virginia Shehan, and Peter Menzies also serve as directors of SHM. The remaining approximately 2% of SHM's common stock is owned by Ellen Menzies, a cousin of the sisters, Diane and Martha.

At all relevant times, SHM's six person board of directors consisted of plaintiffs, Phillip Mullins, Martha, Virginia Shehan, and Peter Menzies. In 2003, Charles Snipes ("Snipes") replaced Phillip Mullins as a director on SHM's board.

Phillip Mullins died on 25 May 2004. On 26 May 2004, plaintiffs filed a complaint against Phillip Mullins, Martha, Virginia Shehan, and Peter Menzies. Plaintiffs sought only a declaratory ruling that the votes of the "Mullins Shareholders do not count in determining matters related to Phillip Mullins or members of his immediate family, and that the votes of [plaintiffs] do count regarding such matters." Plaintiffs never served this complaint on defendants.

Martha qualified as executrix of the Estate and opened the estate in the office of the clerk of superior court in Catawba County. The clerk issued letters testamentary. Beginning on 18 June 2004, Martha published in the *Hickory Daily Record* a statutory general notice to all creditors once a week for four consecutive weeks. This statutory notice notified all existing and potential creditors to present any claims against the Estate on or before 18 September 2004. Failure to provide notice of any claim on or before 18 September would result in the claim being "forever barred" against the Estate. N.C. Gen. Stat. § 28A-19-3 (2005). Plaintiffs did not file a Notice of Claim against the Estate at any time on or before 18 September 2004. On 12 January 2005, the clerk of superior court ordered the Estate closed.

On 13 January 2005, plaintiffs filed an amended complaint against Martha, individually and as executrix of the Estate, Virginia Shehan, Peter Menzies, and SHM. The amended complaint asserted two claims: (1) the original declaratory judgment action regarding the voting rights of SHM's board of directors and (2) a derivative action on behalf of SHM against the Estate to recover "unauthorized payments" made to Phillip Mullins before his death. The amended complaint was served on defendants on 20 January 2005.

On 17 March 2005, plaintiffs moved for summary judgment regarding their declaratory judgment action against defendants. On 20 April 2005, the trial court denied plaintiffs' motion. Plaintiffs appeal in part from this order.

On 4 May 2005, plaintiffs petitioned the clerk of superior court for Catawba County to reopen the Estate. An assistant clerk initially reopened the estate based upon allegations that "[n]ecessary act(s) remain unperformed by the Personal Representative." Martha, as executrix, objected to reopening the Estate and requested a hearing before the clerk of superior court.

On 9 June 2005, the clerk conducted a formal hearing to determine whether the Estate would remain closed. On 9 June 2005, the clerk heard arguments from both parties and considered the briefs and record evidence. The clerk found that the order which reopened the Estate was "improvidently and inappropriately entered" and entered an order setting aside reopening the estate.

On 21 June 2005, plaintiffs noticed appeal of the clerk's order to the Catawba County Superior Court. Plaintiffs alleged: (1) the clerk's order did not meet the procedural requirements of N.C. Gen. Stat. § 1-301.3(b) and (2) Martha had knowledge of plaintiffs' claim against the Estate, but failed to provide them personal notice. The superior court heard plaintiffs' appeal on 10 October 2005 and entered an order on 2 November 2005 affirming the clerk of superior court's order setting aside the reopening of the estate. Plaintiffs appealed to this Court. This Court affirmed the superior court's order. *See In re Estate of Mullins*, 182 N.C. App. 667, —— S.E.2d —— (2007).

In September 2005, defendants moved for summary judgment regarding plaintiffs' derivative action on behalf of SHM against the Estate to recover "unauthorized payments" made to Phillip Mullins before his death. On 31 October 2005, the trial court granted summary judgment for defendants. In November 2005, defendants moved for summary judgment regarding plaintiffs declaratory judgment action regarding the voting rights of SHM's board of directors. On 29 December 2005, the trial court granted defendants' motion. Plaintiffs also appeal from both of these orders.

## II. Issues

Plaintiffs contend the trial court erred by: (1) denying their motion for summary judgment and granting defendants' motion for summary judgment regarding their declaratory judgment action and (2) granting defendants' motion for summary judgment regarding plaintiffs' derivative action.

### III. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "[S]ummary judgment may be appropriate in a declaratory judgment action, under the same rules applicable in other actions." *Floyd v. Integon Gen. Ins. Corp.*, 152 N.C. App. 445, 448, 567 S.E.2d 823, 826 (2002).

The parties stipulated no genuine issue of material fact exists regarding plaintiffs' declaratory judgment action before the trial court. *See Floyd*, 152 N.C. App. at 448, 567 S.E.2d at 826 ("[I]n the instant case the parties stipulated to all material facts, leaving only questions of law; accordingly, summary judgment was proper in this case.). Since the parties stipulate no issue of material fact is in dispute, "[o]ur only inquiry is whether defendants are entitled to judgment as a matter of law." *McCabe v. Dawkins*, 97 N.C. App. 447, 448, 388 S.E.2d 571, 572, (citation omitted), *disc. rev. denied*, 362 N.C. 597, 393 S.E.2d 880 (1990). We must determne whether summary judgment was properly entered in defendants' favor, or whether summary judgment should have been entered for plaintiffs. *Floyd*, 152 N.C. App. at 448, 567 S.E.2d at 826.

### IV. Plaintiffs' Declaratory Judgment Action

**[1]** Plaintiffs argue the trial court erred by denying their motion for summary judgment and granting defendants' motion for summary judgment regarding their declaratory judgment action. Plaintiffs' declaratory judgment action petitioned the trial court to declare that "each of [plaintiffs'] votes counted (and will count) on matters related to [Phillip Mullins] and [Virginia Shehan], and that none of the [defendants'] votes . . . counted (or will count) in such matters." Plaintiffs sought to invalidate defendants' votes as directors of SHM regarding Phillip Mullins and Virginia Shehan's compensation and the election of Virginia Shehan as SHM's president. Plaintiffs contend the individual defendants are all related and their past votes were voidable as conflict of interest transactions under N.C. Gen. Stat. § 55-8-31 (2005).

GEITNER v. MULLINS

[182 N.C. App. 585 (2007)]

## A.  N.C. Gen. Stat. § 55-8-31

N.C. Gen. Stat. § 55-8-31 states:

(a) A conflict of interest transaction is *a transaction with the corporation* in which a director of the corporation has a direct or indirect interest. A conflict of interest transaction is not voidable by the corporation solely because of the director's interest in the transaction if any one of the following is true:

(1) The material facts of the transaction and the director's interest were disclosed or known to the board of directors or a committee of the board of directors and the board of directors or committee authorized, approved, or ratified the transaction;

(2) The material facts of the transaction and the director's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction; or

(3) The transaction was fair to the corporation.

(b) For purposes of this section, a director of the corporation has an indirect interest in a transaction if:

(1) Another entity in which he has a material financial interest or in which he is a general partner is a party to the transaction; or

(2) Another entity of which he is a director, officer, or trustee is a party to the transaction and the transaction is or should be considered by the board of directors of the corporation.

(c) For purposes of subsection (a)(1) of this section, a conflict of interest transaction is authorized, approved, or ratified if it receives the affirmative vote of a majority of the directors on the board of directors (or on the committee) who have no direct or indirect interest in the transaction. If a majority of the directors who have no direct or indirect interest in the transaction vote to authorize, approve, or ratify the transaction, a quorum is present for the purpose of taking action under this section. The presence of, or a vote cast by, a director with a direct or indirect interest in the transaction does not affect the validity of any action taken under subsection (a)(1) of this section if the transaction is otherwise authorized, approved, or ratified as provided in that subsection.

(d) For purposes of subsection (a)(2), a conflict of interest transaction is authorized, approved, or ratified if it receives the vote of

GEITNER v. MULLINS

[182 N.C. App. 585 (2007)]

a majority of the shares entitled to be counted under this subsection. Shares owned by or voted under the control of a director who has a direct or indirect interest in the transaction, and shares owned by or voted under the control of an entity described in subsection (b)(1), may not be counted in a vote of shareholders to determine whether to authorize, approve, or ratify a conflict of interest transaction under subsection (a)(2). The vote of those shares, however, shall be counted in determining whether the transaction is approved under other sections of this Chapter. A majority of the shares that would if present be entitled to be counted in a vote on the transaction under this subsection constitutes a quorum for the purpose of taking action under this section.

(Emphasis supplied).

### B. Familial Relationships

Plaintiffs argue that defendants' past and future votes as directors are voidable as conflict of interest transactions under N.C. Gen. Stat. § 55-8-31 solely because of their familial relationship with Phillip Mullins and Virginia Shehan. We disagree.

The General Assembly clearly and unequivocally did not define a director as having a conflict of interest solely based upon a familial relationship in N.C. Gen. Stat. § 55-8-31. Our Supreme Court has stated, "it is well settled that where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Union Carbide Corp. v. Offerman*, 351 N.C. 310, 314, 526 S.E.2d 167, 170 (2000) (internal quotations and citations omitted).

Plaintiffs cite no controlling North Carolina authority to support their argument and instead rely on cases from other jurisdictions, as persuasive authority, in support of their argument. *See In re Mi-Lor Corp.*, 348 F.3d 294, 306 (1st Cir. 2003) (under Massachussetts law, a director is interested if they have a familial relationship with a party to a corporate transaction); *see also Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 646 (D. Ariz. 1994) (a director is interested when the corporate transaction involves a person with whom he has a familial relationship).

In each of the cases cited by plaintiffs, that jurisdiction has either legislatively or judicially ruled a director has a conflict of interest if a

party to the transaction with the corporation is a member of the director's family. It is not the proper role or function of this Court to extend N.C. Gen. Stat. § 55-8-31 beyond the clear and unambiguous limits established by the General Assembly. *Union Carbide Corp.*, 351 N.C. at 314, 526 S.E.2d at 170.

### C. Transactions with the Corporation

N.C. Gen. Stat. § 55-8-31 governs director conflict of interest transactions. N.C. Gen. Stat. § 55-8-31(a) states, "[a] conflict of interest transaction is *a transaction with the corporation* in which a director of the corporation has a direct or indirect interest." (Emphasis supplied). N.C. Gen. Stat. § 55-8-31(a) applies to interested director transactions "with the corporation." *See also Smith v. Robinson*, 343 F.2d 793, 799 (1965) (emphasis supplied) (The words "corporate transaction" in former N.C. Gen. Stat. § 55-30(b), the immediate predecessor to N.C. Gen. Stat. § 55-8-31, "were intended to apply to a situation *where the corporate director is dealing directly with the corporation*.").

Plaintiffs assert N.C. Gen. Stat. § 55-8-31 as a basis to void defendants' votes as directors of SHM, but do not challenge any "transaction with the corporation" by defendants. N.C. Gen. Stat. § 55-8-31 provides no mechanism to challenge the actions of a director discharging his duties as a director, including voting on electing officers and setting officer compensation. None of these actions by the board of directors is a "transaction with the corporation." Instead, the board of directors, as the governing body of the corporation, were electing the officers and managers of the corporation and setting the compensation these officers and managers were to receive. N.C. Gen. Stat. § 55-8-31(a).

When a director is discharging duties as a director, the proper statutory mechanism to challenge the director's action is N.C. Gen. Stat. § 55-8-30. N.C. Gen. Stat. § 55-8-30(a) (2005) states:

(a) A director shall *discharge his duties as a director*, including his duties as a member of a committee:

(1) In good faith;

(2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) In a manner he reasonably believes to be in the best interests of the corporation.

**GEITNER v. MULLINS**

[182 N.C. App. 585 (2007)]

(Emphasis supplied). Plaintiffs failed to argue any of defendants' votes or actions violated N.C. Gen. Stat. § 55-8-30.

Consistent with the plain and unambiguous language of the statute, the trial court correctly found "[p]ursuant to § 55-8-31, none of the members of [SHM's] Board of Directors (the "Board") who voted on the transactions about which Plaintiff's complain in Count One of the Amended Complaint had a direct or indirect conflict of interest[.]" None of the actions plaintiffs complained of were "transactions with the corporation." N.C. Gen. Stat. § 55-8-31. The trial court properly denied plaintiffs' motion and granted defendants' motion for summary judgment regarding plaintiffs' declaratory judgment action. This assignment of error is overruled.

## V. Plaintiffs' Derivative Action

[2] The trial court based its decision to grant defendants' motion for summary judgment regarding plaintiffs' derivative action on its finding the Estate was properly closed when plaintiffs' complaint was filed. The superior court affirmed the clerk's order that stated the reopening of the Estate was "inappropriately entered."

Plaintiffs argue if this Court finds the superior court erred in affirming the clerk of court's order setting aside the reopening of the Estate, the sole ground for granting defendants' motion for summary judgment no longer exists. In that event, the trial court's order granting defendants' motion for summary judgment must be reversed. As noted above, this Court affirmed the superior court's order, which affirmed the clerk of superior court's order setting aside the *ex parte* order reopening of the Estate. *See In re Estate of Mullins*, 182 N.C. App. 667, —— S.E.2d —— (2007). This assignment of error is overruled.

## VI. Conclusion

The General Assembly clearly and unequivocally omitted imposing or regulating a conflict of interest on a corporate director based solely upon a familial relationship between that director and another director, officer, or employee in enacting N.C. Gen. Stat. § 55-8-31. As noted during oral argument, all parties before us are closely related and are shareholders, directors, and officers in this closely held family corporation. The trial court properly granted defendants' motion for summary judgment regarding plaintiffs' declaratory judgment action.

We previously held the Estate was properly closed. The trial court's order granting defendants' motion for summary judgment is affirmed.

Affirmed.

Judge ELMORE concurs.

Judge GEER concurs in the result only by separate opinion.

GEER, Judge, concurring in the result.

I do not agree with the majority opinion's view that a director does not have a conflict of interest when voting in favor of his or her spouse or child, and I do not agree with that opinion's analysis of plaintiffs' claims regarding defendants' votes. Nonetheless, I concur in the decision to affirm the trial court's decision granting summary judgment for the following reasons.

Plaintiffs asserted two claims for relief in their amended complaint. First, with respect to votes of the Southern Hosiery Mills, Inc. Board of Directors, plaintiffs asked for a declaratory judgment that the votes of Martha Mullins (wife of Phillip Mullins), Virginia Shehan (daughter of Mr. Mullins), and Peter Menzies (son of Mr. Mullins) "did not (and will not) count in determining matters related to Phillip Mullins or Virginia Shehan." Second, plaintiffs asserted a shareholder derivative action seeking, on behalf of the company, recovery of payments made to Mr. Mullins or for his benefit.

For the declaratory judgment action, plaintiffs rely exclusively on N.C. Gen. Stat. § 55-8-31 (2005). That statute defines "[a] conflict of interest transaction [as] a transaction with the corporation in which a director of the corporation has a direct or indirect interest." N.C. Gen. Stat. § 55-8-31(a). The statute defines an "indirect interest," N.C. Gen. Stat. § 55-8-31(b), but leaves undefined a "direct interest." Defendants contend—and the majority opinion agrees—that a director does not have a "direct interest" in a transaction even when that transaction benefits his or her spouse or child.

I believe this conclusion is illogical and inconsistent with the general understanding of the corporate world. As the leading commentator on North Carolina corporate law has stated:

The statute does not define a direct interest, but instead leaves the point to common sense. Certainly a director normally would

be deemed to have a direct interest if he *or a member of his immediate family* (in the common use of that term) has either a material financial interest in the transaction or a relationship with the other parties to the transaction that reasonably might be expected to affect his judgment in a manner adverse to the corporation. Any other types of direct interest are left to the courts to identify under the particular circumstances.

Russell Robinson, *North Carolina Corporation Law* § 15.01 (2006) (emphasis added). *See also* 18 Am. Jur. 2d, *Corporations* § 1502 ("The rule condemning transactions of corporate officers and directors with the corporation where they represent both themselves and the corporation extends to transactions by, or on behalf of, the spouse or other relative of such officers or directors.").

I agree with Mr. Robinson that it is a common sense conclusion that a director has a "direct interest" in a transaction when a spouse—with whom he or she lives and may have joint finances—will personally benefit from that transaction. Similarly, I cannot conclude that a director is unbiased with respect to a transaction benefitting his or her child.

Indeed, the Revised Model Business Corporation Act specifically states in comment 5 of the official commentary to section 8.31, the section that was the basis for N.C. Gen. Stat. § 55-8-31: "For purposes of section 8.31 a director should normally be viewed as interested in a transaction if he *or the immediate members of his family* have a financial interest in the transaction . . . ." Revised Model Bus. Corp. Act § 8.31 cmt. 5 (1985) (emphasis added). I can conceive of no reason to apply a different interpretation to N.C. Gen. Stat. § 55-8-31 than that of the Model Act, especially when the General Assembly would have been fully aware of the Model Act's commentary when enacting our Business Corporation Act. This interpretation is also consistent with opinions of this Court in analogous situations. *See Lowder v. All Star Mills, Inc.*, 103 N.C. App. 479, 482, 405 S.E.2d 794, 796 ("Jeanne Lowder's claims arise from and depend on the role of her husband as officer of the corporation. To regard her claims otherwise would be to enable officers of a corporation to defraud their companies and avoid any accounting or detection by acting through their spouses and then allowing a spouse to assert claims."), *disc. review denied*, 330 N.C. 119, 409 S.E.2d 595 (1991); *cf. City of Asheville v. Morris*, 133 N.C. App. 90, 92, 514 S.E.2d 289, 291 (1999) (holding that Civil Service Board members had "interests in the matter" and should have

recused themselves when one member had a husband and another a son who would be affected by the Board's decision).

Moreover, there is no need, in this case, to decide this issue. According to plaintiffs, N.C. Gen. Stat. § 55-8-31 invalidated any votes by the Mullins shareholders. The plain language of the statute is contrary to this contention. Accordingly, I would simply hold that plaintiffs failed to establish a legal basis for invalidating the votes, regardless whether the Mullins shareholders had a direct or indirect interest in any transactions.

N.C. Gen. Stat. § 55-8-31 never specifically addresses who may vote with respect to a transaction, but instead addresses only the validity of a "conflict of interest transaction." As the North Carolina commentary to this section states, the statute establishes that "a conflict of interest transaction 'is not voidable by the corporation solely because of the director's interest' if it passes one of the three prescribed tests . . . ." N.C. Gen. Stat. § 55-8-31 commentary (quoting N.C. Gen. Stat. § 55-8-31(a)). Mr. Robinson explains: "[T]he statute has *the limited purpose* and effect of defining more fully the common-law rule of the voidability of transactions because of a conflict of interest . . . ." Robinson, *supra*, § 15.01 (emphasis added). *See* Revised Model Bus. Corp. Act § 8.31 cmt. 1 ("The sole purpose of section 8.31 is to sharply limit the common law principle of automatic voidability . . . .").

N.C. Gen. Stat. § 55-8-31(a) specifically provides:

A conflict of interest transaction is not voidable by the corporation solely because of the director's interest in the transaction if any one of the following is true:

(1) The material facts of the transaction and the director's interest were disclosed or known to the board of directors or a committee of the board of directors and the board of directors or committee authorized, approved, or ratified the transaction;

(2) The material facts of the transaction and the director's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction; or

(3) The transaction was fair to the corporation.

With respect to the vote by the board of directors addressed in § 55-8-31(a)(1), there must be an "affirmative vote of a majority of the directors on the board of directors (or on the committee) who have no direct or indirect interest in the transaction." N.C. Gen. Stat. § 55-8-31(c). The statute adds, however, that "[t]he presence of, *or a vote cast by*, a director with a direct or indirect interest in the trans-action *does not affect the validity of any action taken under sub-section* (a)(1) of this section if the transaction is otherwise author-ized, approved, or ratified as provided in that subsection." *Id.* (emphases added).

Adopting plaintiffs' position would effectively negate N.C. Gen. Stat. § 55-8-31(a) and (c). According to plaintiffs, any conflict of inter-est transaction for which an interested director voted would auto-matically be invalid if there were not enough disinterested votes to constitute a majority of the directors present. This view, rendering the vote invalid, disregards the description, in § 55-8-31(a), of a "con-flict of interest transaction" as only "voidable." *Black's Law Dictionary* 1605 (8th ed. 2004) (emphasis added) defines "void-able" as "describ[ing] *a valid act* that may be voided rather than an invalid act that may be ratified." *Compare id.* 1604 ("Whenever tech-nical accuracy is required, *void* can be properly applied only to those provisions that are of no effect whatsoever—those that are an absolute nullity.").

Significantly, under plaintiffs' view, if a family-run, closely-held corporation had a board of directors composed only of the family members working in the business, no vote could ever be taken on a conflict of interest transaction because all of the votes would be invalidated. Plaintiffs fail to explain how that result can be reconciled with the requirement that "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed by or under the direction of, its board of direc-tors . . . ." N.C. Gen. Stat. § 55-8-01(b) (2005). Plaintiffs would, as a practical matter, require that all family-run, closely-held corporations have at least one non-family member on the board of directors. This has never been the law in North Carolina, where such family busi-nesses are not uncommon.

Further, plaintiffs' approach would eviscerate the portion of the statute providing that a conflict of interest transaction is not even voidable if it is approved by a majority of disinterested direc-tors, is approved by the shareholders, or was fair to the corpora-tion. N.C. Gen. Stat. § 55-8-31(a)(1)-(3). In light of subsections (a)(2)

and (a)(3), the General Assembly could not have intended that § 55-8-31, standing alone, preclude any interested director from voting on a transaction.

Starting with § 55-8-31(a)(1), contrary to the precise language of § 55-8-31(c) that a vote cast by an interested director "does not affect the validity of any action taken under subsection (a)(1)," plaintiffs' arguments suggest that such a vote could invalidate the transaction. For example, N.C. Gen. Stat. § 55-8-24(c) (2005) provides that "[i]f a quorum is present when a vote is taken, the affirmative vote of a majority of directors present is the act of the board of directors unless the articles of incorporation or bylaws require the vote of a greater number of directors."[1] With a three-member board of directors, composed of two interested directors and one disinterested director, no action could be taken with respect to a conflict of interest transaction because a majority of the directors present would be required to abstain from voting. Although § 55-8-31(c) has been amended to provide that a single disinterested voter could ratify the transaction under § 55-8-31(a)(1), that provision would never come into play because the transaction could never be authorized in the first instance. *See* N.C. Gen. Stat. § 55-8-31 commentary ("Effective October 1, 2005, subsection (c) is amended to remove the limitation that a conflict of interest transaction may not be approved by a single disinterested director.").

The other two subsections, (a)(2) and (a)(3), would likewise be stripped of any efficacy by plaintiffs' approach. Plaintiffs would require that the majority voting for a conflict of interest transaction be composed of only disinterested directors. Otherwise, according to plaintiffs, the transaction would be invalid as not properly approved by the board of directors. Yet, subsections (a)(2) and (a)(3) specifically allow for a transaction to stand—despite the lack of necessary disinterested voting directors—if it was properly approved by the shareholders or if the transaction was fair to the corporation.

In short, I can find nothing in the North Carolina Business Corporation Act that supports plaintiffs' request for a declaratory judgment that the Mullins family directors' votes "did not (and will not) count

---

1. Notably, the commentary to the Revised Model Act states that "[t]he approval mechanisms" set forth in subsection (c) (addressing disinterested director approval) and subsection (d) (addressing shareholder approval) "relate only to the elimination of [the] automatic rule of voidability *and do not address the manner in which the transactions must be approved under other sections of this Act*." Revised Model Bus. Corp. Act § 8.31 cmt. 1 (emphasis added).

in determining matters related to Phillip Mullins or Virginia Shehan." For that reason, I would affirm the trial court's order entering judgment on plaintiffs' first claim for relief.[2]

Plaintiffs' second claim for relief—a derivative action seeking repayment of funds paid to or on behalf of Phillip Mullins—rests on an assumption that the votes approving those payments were ineffective because family members of Mr. Mullins voted to approve the transactions. Plaintiffs seek return of all such "unauthorized payments." My rejection of plaintiffs' first claim for relief, therefore, necessarily results in the conclusion that the trial court properly granted summary judgment on the second claim for relief.

I believe that the transactions challenged by plaintiffs were "not voidable by the corporation," N.C. Gen. Stat. § 55-8-31(a), if they "[were] fair to the corporation," N.C. Gen. Stat. § 55-8-31(a)(3).[3] Plaintiffs did not allege anywhere in their amended complaint that any of the challenged payments were unfair. Since the only question presented by the amended complaint is whether the payments were "unauthorized," there was no issue before the court regarding the fairness of the transactions to the corporation. Without any dispute over the fairness of the transactions, those transactions cannot be voided, and there is no basis for obtaining recovery of the funds from Mr. Mullins' estate. I, therefore, agree that the trial court properly entered summary judgment on the second claim for relief.

---

2. I, therefore, see no reason to address the majority opinion's view that no transaction was involved. *But see Fulton v. Talbert*, 255 N.C. 183, 184, 120 S.E.2d 410, 411 (1961) (applying conflict of interest principles under former law to "contracts fixing the amount and method of paying compensation for services to be rendered" by officers).

3. The parties do not dispute that subsections (a)(1) and (a)(2) of N.C. Gen. Stat. § 55-8-31 are not applicable.