J. E. WALL, As Trustee in Bankruptcy for ROBERTS CONSTRUCTION COM-
PANY, INC., R-A PROPERTIES, and PALM PARK, INC. (successor to
HAZARD CANNON D/B/A CANNON CONSTRUCTION COMPANY); ROBIN-
SON O. EVERETT and KATHRINE R. EVERETT D/B/A HOLLY HILLS
APARTMENTS; and HOLLY HILLS APARTMENTS, INC., and POPLAR
APARTMENTS, INC. v. CITY OF DURHAM, a municipal corporation

No. 7814SC810

(Filed 19 June 1979)

1. **Municipal Corporations § 4.4— water and sewer rates—"decapping" pro-
cedure—unnecessary discrimination**

The "decapping" procedure employed by a city to compute the charges for
water and sewer service for apartment complexes in which more than one
apartment is served by a single meter, under which the water usage shown by
the meter is divided by the number of apartments served through the meter,
the water and sewer charge for the quantity resulting from this division is
calculated, and this amount is multiplied by the number of apartments served
through the meter, unreasonably discriminates against the owners of such
apartment complexes, since this procedure subjects those owners to a greater
rate under the city's graduated rate schedule than is applied to other
customers who consume an identical quantity of the same service, and there is
no justification for such discrimination between customers.

2. **Municipal Corporations § 4.4; Estoppel § 4.6— no estoppel to assert water and
sewer rates are discriminatory**

The trial court erred in concluding that plaintiff apartment owners are
estopped to assert that a city's "decapping" procedure for determining water
and sewer rates is unreasonably discriminatory because they elected to install
only one water connection and one meter to serve several buildings in an
apartment complex when they could have installed separate meters for each
unit where there was no evidence that defendant city in any way relied on any
statements or acts of plaintiffs to its detriment.

APPEAL by plaintiffs from *McKinnon, Judge.* Judgment
entered 10 April 1978 in Superior Court, DURHAM County. Heard
in the Court of Appeals on 23 May 1979.

This is a civil action wherein plaintiffs seek to recover alleg-
ed overpayments made for water service furnished to them by
the defendant. Plaintiffs alleged that the defendant's method of
calculating water charges unfairly discriminates against them.
Plaintiffs also seek to enjoin the further use by the defendant of
the method it currently uses to calculate water charges.

The plaintiffs are owners of apartment complexes that receive water service from the defendant. Plaintiff J. E. Wall, as trustee in bankruptcy, is successor in interest to several of the original plaintiffs, and he holds title to several of the apartment projects involved in this action. Poplar Apartments is a 250-unit apartment project in Durham that was constructed in the 1949-1951 period. All of the other apartments involved in this action were constructed in the 1960's and 1970's. Defendant, City of Durham, is a municipal corporation, and it owns and operates the public water system that furnishes water and sewer service to the plaintiffs.

The case was tried before the judge without a jury, and, as noted by Judge McKinnon in the judgment entered on 10 April 1978, "the relevant facts are almost undisputed." The trial judge made extensive findings of fact in an attempt to resolve the controversy between the parties. The relevant facts necessary to an understanding of our opinion are contained in the court's findings, the pertinent portions of which are quoted below. The order in which the findings are quoted is not necessarily the same as they appear in the judge's original findings. For purposes of clarity, we have taken the liberty of rearranging them so that they appear in a narrative form.

> Before the 1950s the City of Durham had a flat water rate structure whereby the same charge was made for the first cubic foot and for each cubic foot of water thereafter regardless of the total volume consumed.

> While the flat water rate schedule was being used, a number of concerns, including Liggett and Myers, The American Tobacco Company and Duke University, continued to expand their operations, and as they expanded they frequently installed new water services and new meters so there were several structures and several meters at single sites operating as a unified concern.

> Sometime in the 1940s . . . the City changed its water . rate structure from a flat rate for each cubic foot of water consumed to a declining rate structure, whereby the volume of water consumption was divided into certain brackets for billing purposes and within those brackets a rate per 100 cu.

ft. unit was applied, and the rate per unit declined as the volume of water consumed increased.

The graduated rate schedule is the same for all users, except to the extent that the City of Durham utilizes procedures sometimes referred to as "decapping" and "recapping" and described in later findings.

Upon the change of the water rate concept from a flat rate to a declining rate structure, and in an effort not to impose additional plumbing requirements on [Liggett and Myers, The American Tobacco Company, and Duke University] to obtain the benefit of their consumption which was occurring at the same integrated site, the City permitted them to use what is known as recapping, that is, the addition of all the consumption of water at a single operating site or location for billing purposes. Thus, as an example, there is an account for Liggett and Myers downtown manufacturing facility, which consists of several buildings located on both sides of Main and Morgan Streets in one single integrated location. The total water consumption at this single location is combined and a bill rendered based on such total consumption. The recapping procedure is utilized when a single water user is obtaining his water service through several meters. Because of the graduated water and sewage rates in the City of Durham, his water and sewage charges would tend to be greater if the charges were computed for water usage through each meter and the resultant charges were added together, than if the water use were initially aggregated and then the water and sewage charge were computed on the aggregate amount of water received through the several meters.

According to a list supplied by the City, the users of City water and sewer services who now receive recapping include: Liggett and Myers, the Durham City Schools, Central Carolina Bank, Duke University, Watts Hospital, White Star Laundry, Burlington Mills, Coca-Cola Bottling Company, Veterans Administration, North Carolina Cerebral Palsy Hospital, American Tobacco Company, Durham Union Bus Station, Golden Belt Manufacturing Company, North Carolina Central University, Budget Realty Company, Valley Terrace

Apartments, R-A Properties, University Apartments, the Gospel Center, Pifer Industries, Environmental Protection Agency, Air Pollution Building, National Institute of Environmental Health Services, Monsanto, Burroughs-Wellcome, IBM, Becton-Dickerson, Hercules Chemical, Raleigh-Durham Airport, General Electric, Sperry-Rand, Gold Kist Poultry, Johnson-Forrester Laundry, New Method Laundry.

As revealed by this list, recapping is now made available to various types of users — including industries, office buildings, commercial establishments, businesses, hospitals, and institutions, such as Duke University.

"Decapping" is a procedure which is utilized by the city in connection with apartment projects or complexes where more than one apartment dwelling is served by a single meter. Under this procedure the water usage shown by the meter is divided by the number of apartments served through the meter; then the water and sewer charge for the quantity resulting from this division is calculated; and, finally, this amount is multiplied by the number of apartments served through the meter.

In the decapping procedure, no adjustment is made for apartment units that are vacant and the water usage through a meter is divided by the total number of apartments served by that meter without regard to whether any of the apartments are vacant.

In 1953 the defendant adopted Ordinance No. 1205, as amended by Ordinance No. 1258, which contains the following provisions:

"For multiple unit houses there shall be a minimum charge of $1.50 per month for each family unit as hereinafter defined for each 500 cu. ft. of water used in such unit. Where more than 500 cu. ft. of water is used per month per family unit the additional water shall be pro rated equally between and among the family units served through the same water meter and charged at the rate prescribed for the next bracket of charges in the above schedule.

The term 'family unit' above mentioned means one or more individuals occupying premises, including kitch-

en or bath or both, and living as a single housekeeping unit."

The concept and practice of treating such family unit or dwelling unit in multiple housing as a separate consumer in the structure of water and sewer rates and charges, and billing therefor on an averaging basis, was actually in effect in the City of Durham for several years prior to the adoption of the 1953 ordinance [No. 1205] and at and prior to the time the apartment buildings and complexes involved in this action were constructed.

In August, 1969, the defendant adopted Ordinance No. 2913, amending the amounts of its previous water and sewer rates and charges, but continuing in ordinance from the preexisting averaging practice and policy with regard to apartment and apartment complex buildings, the pertinent portions of which ordinance are as follows:

Monthly Rates for Water and Sewer Service, and for Sewer Service, Only, Inside the City.

"The schedule of monthly rates for City water and sewer service, inside the city, shall be as follows:

| Consumption Per month (Cubic feet) | Rate per 100 Cubic feet | Cost each Division |
|---|---|---|
| First 300 | $1.20 | $    3.60 |
| Next 3,000 | .86 | 25.80 |
| Next 6,700 | .72 | 48.24 |
| Next 10,000 | .59 | 59.00 |
| Next 20,000 | .48 | 96.00 |
| Next 460,000 | .38 | 1,748.00 |
| Over 500,000 | .27 | |
| Minimum Charge | | 3.60 |

Two or more dwelling units having a common water or sewer meter shall be billed in the following manner:

(a) Each dwelling unit served by a common meter shall be charged on the basis of the mean consumption or discharge of all dwelling units served by that meter; provided that;

(b) The minimum charge shall be made for each dwelling unit if the mean consumption or discharge is not as great as the minimum provided for in this section."

Until the revision of Durham's water rates in 1976, the decapping procedure involved the use of a minimum charge per unit; since that revision only a single service charge of $2.23 per meter has been imposed without regard to the number of units served through a single meter.

However, the City has continued to divide usage by total number of apartment units served through the meter without allowance for vacancy.

At its meeting of April 5, 1976, the City Council adopted a policy, effective July 1, 1976, as follows:

"In addition, the Special Committee recommends the adoption of the following policies and also recommends that the City Administration develop the necessary criteria and means for their implementation.

(1) That a limited practice of recapping be continued after July 1, 1976, based on:

(a) the application of the service charge to all meters including those recapped,

(b) the limitations of recapping to single corporate entities or persons (specifically excluding neighborhood organizations or similar organizations developed solely to take advantage of the policy), and

(d) the limitation of recapping to buildings or facilities on a single city block or contiguous city block or contiguous city blocks.

(2) That on July 1, 1976, the policy of decapping be modified so that:

(a) the service charge only applies to number of meters in the apartment complex, and

(b) that the remaining portion of the bill be calculated as at present from the consumption schedule."

Prior to 1965 the City of Durham had authorized a single meter to serve a number of apartments in the same building. Thus Poplar Apartments, which was constructed in the 1949-1951 period, had a single meter for each of the separate buildings in the complex, although each of these buildings contained more than one apartment unit. "Decapping" in some form was applied by the City at least as early as 1953 with respect to a structure that contained several apartments but was served by a single water meter.

Prior to 1965 the Durham City Code did not allow more than one building to be served by a single meter. At a City Council meeting of July 6, 1965, Ordinances 2394 and 2395 were adopted which authorized common water and sewer connections for the following types of multiple building developments — group apartment housing, motels, hospitals, industrial buildings, schools, and trailer courts. This ordinance was for the mutual convenience of the City and prospective developers. Subsequently, common water and sewer connections were allowed in shopping centers and condominium projects. The ordinance authorizing the common water and sewer connections makes no reference to decapping. However, decapping was applied to those apartment units located in different buildings and served through a common meter just as it had previously been applied to those apartment units located in the same building and served by a common meter.

On the other hand, no decapping procedure has been authorized by the City of Durham or applied to shopping centers or other types of projects where, after 1965, more than one building could be served through one meter.

Whatever the quantity of water involved, the delivery of water to a meter serving a number of apartment units costs the city of Durham no more than delivery of this same quantity of water to a meter serving a different user of water — whether an industry, a store, a motel, an office building, a university, or any other type of user.

The owners and developers of apartments and apartment complexes now have and have had in the City of Durham for many years the privilege and option to provide separate

water connections and separate water meters for each apartment building and for each separate family or dwelling unit in such apartment building, and in fact there are a number of cases in the City of Durham where that has been done; and if separate water connections and separate meters were installed for each family unit or dwelling unit located in multiple housing, the water consumption of such family unit would be measured by the meter just as electric power or gas consumption is measured, and there would be a separate monthly billing for each of the individual family units, which bills could either be sent to each family unit or to the apartment operator, as desired.

The plaintiff apartment owners and developers in this action elected not to install separate connections and separate meters to serve each separate family unit or dwelling unit because it is more economical to them, in terms of fewer water lines and meters to buy and maintain, and saving in other ways, to install only one connection and meter to a building or group of buildings housing many family dwelling units, and by electing not to install separate connections and separate meters, and thereby making an accurate measurement of separate family unit consumption impossible, they are able to effect substantial savings in cost.

The practice of averaging water consumption among family units in apartment buildings for billing purposes results in the monthly water and sewer bills for an average family unit being approximately equal to the monthly water and sewer bill for an average family of four residing in a single family detached residence.

If the practice of treating each family unit in an apartment building as a separate consumer and averaging among them the total volume of water passing through the master meter, in the absence of separate meters for each family unit, were discontinued, the result would be that at the same rate structure now in effect the single family unit located in a single family detached residence would pay substantially more than would the family unit located in an apartment building next door who used the same amount of water.

Up to about three years ago the defendant used a practice which allowed apartment owners and operators to notify it each month as to the number of vacancies which had occurred during the month, and the defendant would delete those from its averaging process; but about three years ago this practice was discontinued. If fewer apartment units are rented at any particular time, that would generally have the effect of lowering the average consumption which would lower the billing in a corresponding fashion even though the defendant was not informed of vacancies.

The defendant maintains the meter, the lateral water and sewer connections to private property, the distribution and collection pipe lines, and all water and sewer plants. The owner of the apartment building or other structure on private property which is served by water and sewer services, is responsible for the cost of installing and maintaining all lines and installations outside of the street right-of-way.

Based on its findings of fact, the court made the following pertinent conclusions of law:

[The plaintiffs] have failed to show that the water and sewer rates and charges, or the method of billing therefor, as contained in the ordinance or practice which they challenge, are so unreasonable, arbitrary, or legally discriminative as to exceed the lawful and reasonable discretion of the defendant, and to constitute invalid and unenforceable acts and practices.

Even if there should exist a degree of discrimination, in that the amount of monetary payments by all users of water and sewer service may not be exactly the same, such resulting discrimination is not because of arbitrary action of the defendant or action taken without a reasonable fact basis or justification.

The rate structure and billing methods and practices challenged by the plaintiffs in this action are supported and justified by a factual basis for classification and by evidence which justifies the charges and method and practice of billing.

By their conduct in electing to install only one connection and one meter to each separate building, and later to install only one connection and one meter to serve several buildings in an apartment complex, under the rate structure in effect for a substantial period of time which billed for water and sewer consumption on a basis of treating each family unit or dwelling unit as a consumer and computing such charges on a mean or average consumption basis for each of such family unit consumers, when at the same time they had the right, if they so desired, to install separate meters for each family unit located in such apartment buildings, the original and present plaintiffs waived their right to now contend that such water and sewer rate structure is invalid, and are estopped from doing so.

From the judgment dismissing their claim, plaintiffs appealed.

*Everett, Everett, Creech & Craven, by Robinson O. Everett and Robert D. Holleman, for plaintiff appellants.*

*William I. Thornton, Jr., and Claude V. Jones for defendant appellee.*

HEDRICK, Judge.

By assignments of error thirteen, sixteen, and seventeen, plaintiffs contend that the court erred in concluding that the defendant's ordinance and billing practice was not unreasonably discriminatory and was justified by a factual basis. We agree.

The authority of a municipal corporation to own, operate, and finance a public utility is granted by G.S. § 160A-312. The authority to fix and enforce rates is contained in G.S. § 160A-314(a), which provides:

A city may establish and revise from time to time schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise. Schedules of rents, rates, fees, charges, and penalties *may vary according to classes of service,* and different schedules may be adopted for services provided outside the corporate limits of the city. [Emphasis added.]

A public utility, whether publicly or privately owned, may not unreasonably discriminate in the distribution of its services or the establishment of rates. *Dale v. City of Morganton,* 270 N.C. 567, 155 S.E. 2d 136 (1967); *Town of Taylorsville v. Modern Cleaners,* 34 N.C. App. 146, 237 S.E. 2d 484 (1977). Numerous cases have recognized the rule that the statutory authority of a city to fix and enforce rates for public services furnished by it and to classify its customers is not a license to discriminate among customers of essentially the same character and services. In *State ex rel. Utilities Commission v. Mead Corp.,* 238 N.C. 451, 462, 78 S.E. 2d 290, 298 (1953), our Supreme Court stated: "There must be substantial differences in service or conditions to justify difference in rates. There must be no unreasonable discrimination between those receiving the same kind and degree of service." In 12 McQuillan, *Municipal Corporations* § 35.37b, at 485-86 (3d ed. 1970), the general rule is stated as follows:

> A municipality has the right to classify consumers under reasonable classifications based upon such factors as the cost of service, the purpose for which the service or the product is received, the quantity or the amount received, the different character of the service furnished, the time of its use or any other matter which presents a substantial difference as a ground of distinction.

[1] In the present case, it is undisputed that the "decapping" procuedure employed by the defendant in computing the charges for water and sewer service furnished to the plaintiffs results in a higher charge than is applied to a similarly situated user who is not subjected to the "decapping" procedure. Thus, the effect of "decapping" is to subject the plaintiffs to a different, and greater, rate schedule than is applied to other customers of the defendant who consume an identical quantity of the same service. There are no findings of fact in this record to justify the different treatment accorded the plaintiffs by the defendant. Indeed, the only finding made by the trial judge pertaining to the cost and conditions of service was that "the delivery of water to a meter serving a number of apartment units costs the city of Durham no more than delivery of this same quantity of water to a meter serving a different user." Thus, application of the above-stated principles of law to the ordinance requiring "decapping," the "policy" adopted by the City Council on 5 April 1976, and the resultant billing pro-

cedures, compels the conclusion that the defendant unreasonably discriminates against the plaintiffs, and that the defendant's efforts to classify the plaintiffs by use of the "decapping" procedure is clearly not justified by any "factual basis." Furthermore, the unchallenged findings of fact disclose that the plaintiffs are entitled to have their charges for water and sewer service calculated on the same basis as all other customers served through a single or "master" meter.

We note that the procedure referred to in the findings of fact as "recapping" also appears, on this record, to be discriminatory since according to the findings of fact, some apartment complexes receive the benefits of "recapping," and there are no findings showing any factual basis for distinction between apartments allowed to "recap" and the plaintiffs.

[2] By assignment of error number eighteen, plaintiffs contend the trial court erred in its conclusion that by their conduct in electing to install only one water connection and one meter to serve several buildings in an apartment complex when they could have installed separate meters for each unit, the plaintiffs are now estopped from contending that the water and sewer rate structure is unreasonably discriminatory. We think the doctrine of equitable estoppel has no application in the present case.

It is essential to an estoppel that the person asserting the estoppel must have changed his position to his detriment in reliance upon the statements or acts of the parties sought to be estopped. *State Highway Commission v. Thornton,* 271 N.C. 227, 156 S.E. 2d 248 (1967); *Webber v. Webber,* 32 N.C. App. 572, 232 S.E. 2d 865 (1977). The only change of position of the defendant occurred when it amended its ordinances 2394 and 2395 on 6 July 1965 and authorized common sewer and water connections for various types of multiple building developments, including apartment complexes, motels, hospitals, schools, and industrial buildings. There is no evidence whatsoever that the defendant in any way relied on any statements or acts of the plaintiffs to its detriment in changing its ordinances. Thus, the trial court's conclusion that the plaintiffs have been estopped from challenging the validity of the water and sewer charges of the defendant is erroneous.

Because of our disposition of this case, we find it unnecessary to discuss plaintiffs' remaining assignments of error.

The result is: That portion of the judgment declaring that the defendant does not unreasonably discriminate against the plaintiffs is vacated; the cause is remanded to the Superior Court for the entry of a conclusion that the defendant unreasonably discriminates against these plaintiffs in its charges for water and sewer service; for further proceedings to determine what amount, if any, each plaintiff is entitled to recover from the defendant for the alleged overpayments; and for entry of an appropriate judgment.

Vacated in part; and remanded.

Chief Judge MORRIS and Judge WEBB concur.