# COURT OF APPEALS

OF

NORTH CAROLINA

AT

RALEIGH

---

CEDAR GREENE, LLC, ET AL AND O'LEARY GROUP WASTE SYSTEMS, LLC,
PLAINTIFFS V. CITY OF CHARLOTTE, DEFENDANT

No. COA12-212

(Filed 7 August 2012)

**1. Jurisdiction—standing—anti-discrimination principle—
public enterprise services—reimbursement policy**

The trial court erred by failing to grant defendant City's
motion to dismiss the claim with respect to plaintiff O'Leary for
lack of standing. The anti-discrimination principle embodied in
N.C.G.S. § 160A-314 protects only customers of public enterprise
services, not service providers. However, the trial court did not
err in failing to grant the City's motion to dismiss the statutory
discrimination claim with respect to plaintiff Cedar Greene.
Cedar Greene demonstrated the requisite standing based on its
showing of a threatened financial injury by the City's alleged dis-
criminatory reimbursement policy.

**2. Cities and Towns—statutory discrimination claim—solid
waste disposal services—multi-family complexes**

The trial court erred by granting summary judgment in favor
of plaintiffs on their statutory discrimination claim. The City's
reimbursement policy did not treat Cedar Greene differently
from other multi-family complexes in the provision of solid
waste disposal services.

Judge CALABRIA dissenting.

1

**CEDAR GREENE, LLC v. CITY OF CHARLOTTE**

[222 N.C. App. 1 (2012)]

Appeal by defendant from judgment entered 14 December 2011 by Judge H. William Constangy in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 June 2012.

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot, A. Ward McKeithen, and Matthew F. Tilley, for plaintiff appellees.*

*Office of the City Attorney, by Senior Assistant City Attorney S. Mujeeb Shah-Khan and Assistant City Attorney Thomas E. Powers, III, for defendant appellant.*

*K&L Gates LLP, by Roy H. Michaux, Jr., for Greater Charlotte Apartment Association amicus curiae.*

McCULLOUGH, Judge.

Defendant City of Charlotte ("the City") appeals from the trial court's summary and declaratory judgment finding and concluding that the City's reimbursement policy for the disposal of supplemental solid waste collected from multi-family complexes constitutes unlawful, unreasonable, and arbitrary discrimination in the provision of a public enterprise service in violation of N.C. Gen. Stat. § 160A-314 (2011). On appeal, the City argues the trial court erred in (1) denying its motion to dismiss with respect to both plaintiffs under Rule 12(b)(1) of our Rules of Civil Procedure; (2) granting plaintiffs' motion for summary judgment and denying its motion for summary judgment after finding the City's reimbursement policy is discriminatory in violation of N.C. Gen. Stat. § 160A-314; and (3) imposing a specific injunctive remedy against the City to correct the discriminatory practice. After careful review, we reverse and remand for further proceedings.

## I. Background

By local ordinance, and pursuant to statutory authority to engage in "public enterprises" under Chapter 160A of our General Statutes, the City furnishes solid waste services to multi-family complexes, including apartment complexes, condominiums, and trailer parks, that maintain dumpsters or compactors for the storage and collection of solid waste within its corporate limits. The City provides to each multi-family complex a fixed number of solid waste collections per week in accordance with a formula based on the ratio of residential units to dumpsters at the complex. This primary collection is provided by the City through a private contractor, Republic Services, Inc. ("Republic"). If a multi-family complex desires to receive any additional weekday collections, the complex must privately contract for such supplemental collection service.

CEDAR GREENE, LLC v. CITY OF CHARLOTTE

[222 N.C. App. 1 (2012)]

In addition to its primary collection service, the City provides for the disposal of solid waste collected from multi-family complexes through the reimbursement of disposal fees charged by the City's designated landfill for the disposal of residential solid waste. Pursuant to the City's ordinances, the City levies on each separate multi-family complex an annual disposal fee for the disposal of all solid waste collected from the complex. This annual disposal fee, in the amount of $27 per residential unit, corresponds to the fees charged by the City's designated landfill to dispose of the total amount of solid waste that a unit within a multi-family complex produces during one year. Accordingly, the annual disposal fee is calculated to account for the cost of the disposal of all solid waste collected from each multi-family complex through both the primary collection and any supplemental collections.

Pursuant to its contractual agreement with Republic, the City provides reimbursement to Republic for all disposal fees paid on account of both the primary collection and any supplemental collections for which Republic is hired. However, the City does not provide any reimbursement of disposal fees to supplemental collection service providers other than Republic. Republic was awarded the contract with the City after submitting a bid for the services, as did five other companies. In order to obtain the lowest possible rate for its primary collection service, the City included its reimbursement policy for disposal fees as a provision in the guidelines for consideration by the companies choosing to submit a bid for the services.

Plaintiff Cedar Greene, LLC ("Cedar Greene") owns and operates a residential apartment complex comprised of 224 units, known as Cedar Greene Apartments, within the corporate limits of the City. Accordingly, Cedar Greene Apartments is entitled to receive such solid waste services from the City. Based on the City's formula, Cedar Greene Apartments receives primary collection once per week by the City through Republic.

Cedar Greene sought to engage plaintiff O'Leary Group Waste Systems, LLC ("O'Leary," collectively with Cedar Greene, "plaintiffs") to provide supplemental collection services at a rate lower than that charged by Republic, on condition that the City provide reimbursement of the supplemental collection disposal fees. Specifically, O'Leary offered to provide supplemental collection service at a rate of $12.50 per pickup from dumpsters and $125.00 for pickup from compactors, versus Republic's rates of $16.95 per pickup from dumpsters and $168.98 per pickup from compactors.

O'Leary represented to the City that it was prepared and willing to meet all uniformly applicable requirements the City may impose on providers of supplemental collection, including those requirements imposed on Republic under the City's contractual agreement, in order to receive reimbursement from the City of the supplemental collection disposal fees. Such requirements include (1) using designated vehicles for supplemental collection of solid waste from multi-family complexes, (2) not commingling solid waste from multi-family complexes with waste from other sources, (3) disposal of such solid waste at the designated landfill, (4) submitting to monetary penalties if it disposes of waste not from multi-family complexes, and (5) allowing the City to monitor collection to ensure compliance with these requirements. Nonetheless, the City informed O'Leary that it would continue to reimburse disposal fees for supplemental waste collected from multi-family complexes only to Republic and that it would not reimburse such disposal fees to O'Leary or any other supplemental collection provider. O'Leary did not previously submit a bid for the City's waste disposal business.

On 23 May 2011, plaintiffs commenced the present action by filing a verified complaint for declaratory judgment in Mecklenburg County Superior Court, alleging that the City's program of reimbursing supplemental collection disposal fees, for which Cedar Greene had already paid the City by way of the annual disposal fee levied on all multi-family complexes, to only those multi-family complexes who hire Republic for supplemental collection services, violated N.C. Gen. Stat. § 160A-314 and the equal protection clauses of the North Carolina and United States Constitutions. After the City removed the case to federal court based on the federal constitutional claim, plaintiffs filed an amended complaint on 27 June 2011 removing the federal claim, and the case was then remanded pursuant to the parties' joint motion to remand. On 26 July 2011, the City filed its answer to plaintiffs' amended complaint and a motion to dismiss plaintiffs' action pursuant to Rules 12(b)(1) and 12(b)(6) of North Carolina's Rules of Civil Procedure, alleging that neither plaintiff had standing to bring the claims set forth in their amended complaint.

On 22 September 2011, plaintiffs filed a motion for summary judgment, and on 4 November 2011, the City also filed a motion for summary judgment. The trial court conducted a hearing on the parties' respective motions on 15 November 2011, and on 14 December 2011, the trial court entered a summary and declaratory judgment denying the City's motion to dismiss and motion for summary judgment and

granting plaintiffs' motion for summary judgment. The trial court's order concluded the City's policy of supplemental collection disposal fee reimbursement was in violation of N.C. Gen. Stat. § 160A-314. In light of that conclusion, the trial court made no ruling on plaintiffs' constitutional equal protection argument. The trial court ordered the City to

> commence within 30 days of entry of this judgment the provision of disposal services for supplemental waste through the reimbursement of Disposal Fees for the benefit of all Multi-Family Complexes equally, without regard to the provider the Multi-Family Complex may choose to hire to provide Supplemental Collection, so long as that collection provider agrees to and complies with those uniformly-applicable require-ments the City may prescribe for such service.

On 22 December 2011, the City filed a motion for reconsideration, or in the alternative, to amend or alter the judgment, or in the alter-native, for relief from the judgment, pursuant to Rules 59(e), 60(b), and 62(b) of our Rules of Civil Procedure. The City also filed a con-temporaneous motion for stay of execution of the judgment. By order dated 3 January 2012, the trial court modified the judgment only to extend the time within which the City must comply with the judg-ment, giving the City a new compliance deadline of 2 February 2012. On 5 January 2012, the City entered timely written notice of appeal to this Court from the trial court's 14 December 2011 judgment. The City also filed a contemporaneous motion for stay with the trial court, seeking a stay of the 14 December 2011 judgment pending appeal. On 18 January 2012, the trial court denied the City's motion for stay.

On 25 January 2012, the City filed a petition for writ of super-sedeas and motion for temporary stay with this Court. On 26 January 2012, this Court granted the City's motion for temporary stay, and on 9 February 2012, this Court allowed the City's petition for writ of supersedeas. We now reach the merits of the City's appeal from the trial court's 14 December 2011 summary and declaratory judgment.

## II. Discussion

### A. Public Enterprise Statutes

Article 16 of Chapter 160A of our General Statutes authorizes all cities in North Carolina to "operate" or "contract for the operation of" those endeavors defined as "public enterprises." N.C. Gen. Stat. § 160A-312(a) (2011); *see City of Asheville v. State*, 192 N.C. App. 1,

27, 665 S.E.2d 103, 123 (2008). Public enterprises are defined to include "[s]olid waste collection and disposal systems and facilities." N.C. Gen. Stat. § 160A-311(6) (2011). The City admits that its policy of reimbursing Republic's disposal costs associated with supplemental collection of solid waste from multi-family complexes is a component of the City's chosen method for solid waste disposal under the public enterprise statutes.

Pursuant to N.C. Gen. Stat. § 160A-314(a), cities are empowered to "establish and revise from time to time schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise." N.C. Gen. Stat. § 160A-314(a) (2011). When a municipality sets rates or fees for public enterprise services, those rates or fees "may vary according to classes of service[.]" *Id.* "This rate-making function is a proprietary rather than a governmental one, limited only by statute or contractual agreement." *Town of Spring Hope v. Bissette*, 305 N.C. 248, 250-51, 287 S.E.2d 851, 853 (1982). " '[U]nder this broad, unfettered grant of authority, the setting of such rates and charges is a matter for the judgment and discretion of municipal authorities, not to be invalidated by the courts *absent some showing of arbitrary or discriminatory action.*' " *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 816, 517 S.E.2d 874, 881 (1999) (emphasis added) (quoting *Town of Spring Hope v. Bissette*, 53 N.C. App. 210, 212-13, 280 S.E.2d 490, 492 (1981), *aff'd*, 305 N.C. 248, 287 S.E.2d 851 (1982)); *see also City of Asheville*, 192 N.C. App. at 27, 665 S.E.2d at 123.

Our case law has established that a city "may not discriminate in the distribution of services or the setting of rates." *City of Wilson v. Carolina Builders*, 94 N.C. App. 117, 120, 379 S.E.2d 712, 714 (1989). "[T]he statutory authority of a city to fix and enforce rates for its services and to classify its customers is not a license to discriminate among customers of essentially the same character and services." *Town of Taylorsville v. Modern Cleaners*, 34 N.C. App. 146, 149, 237 S.E.2d 484, 486 (1977); *see also Wall v. City of Durham*, 41 N.C. App. 649, 659, 255 S.E.2d 739, 745 (1979). "There must be substantial differences in service or conditions to justify differences in rates. There must be no unreasonable discrimination between those receiving the same kind and degree of service." *Utilities Commission v. Mead Corp.*, 238 N.C. 451, 462, 78 S.E.2d 290, 298 (1953). Ultimately, a municipality engages in unreasonable discrimination by charging different rates for public enterprise services to similarly situated customers. *Cabarrus County v. City of Charlotte*, 71 N.C. App. 192,

195, 321 S.E.2d 476, 479 (1984). "The burden of proof is on the party claiming that a rate-setting ordinance is unreasonable or discriminatory." *Ricks v. Town of Selma*, 99 N.C. App. 82, 87, 392 S.E.2d 437, 440 (1990).

### B. Standing to Maintain Discrimination Claim under Statute

**[1]** We first address the City's argument that plaintiffs lacked the requisite standing to maintain a claim of discrimination under N.C. Gen. Stat. § 160A-314, and therefore, the trial court lacked subject matter jurisdiction to enter its summary and declaratory judgment in favor of plaintiffs. " 'Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction.' " *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (quoting *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002)). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005).

Standing consists of three main elements:

"(1) 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Id.* (quoting *Neuse River Found.*, 155 N.C. App. at 114, 574 S.E.2d at 52 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 364 (1992))). "The issue of standing generally turns on whether a party has suffered injury in fact." *Id.* Our Supreme Court has clarified that "[i]t is not necessary that a party demonstrate that injury has already occurred, but a showing of 'immediate or threatened injury' will suffice for purposes of standing." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 642-43, 669 S.E.2d 279, 282 (2008) (quoting *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 129, 388 S.E.2d 538, 555 (1990)).

" ' "Standing typically refers to the question of whether a particular litigant is a proper party to assert a legal position." ' " *Town of Midland v. Morris*, _____ N.C. App. ____, ____, 704 S.E.2d 329, 341 (2011) (quoting *Higgins v. Simmons*, 324 N.C. 100, 103, 376 S.E.2d 449, 452 (1989) (quoting *State v. Labor and Indus. Review Comm'n*,

136 Wis.2d 281, 287 n.2, 401 N.W.2d 585, 588 n.2 (1987))), *disc. review denied*, 365 N.C. 198, 710 S.E.2d 3 (2011). Accordingly, in order to have standing to initiate a lawsuit, a party must, by substantive law, have " 'the legal right to enforce the claim in question.' " *Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer*, ____ N.C. App. ____, ____, 705 S.E.2d 757, 765 (2011) (quoting *Carolina First Nat'l Bank v. Douglas Gallery of Homes*, 68 N.C. App. 246, 249, 314 S.E.2d 801, 803 (1984)), *disc. review denied*, 365 N.C. 188, 707 S.E.2d 243 (2011). "In our de novo review of a motion to dismiss for lack of standing, we view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Mangum*, 362 N.C. at 644, 669 S.E.2d at 283.

In the present case, the City contends O'Leary lacks standing to maintain a discrimination claim under N.C. Gen. Stat. § 160A-314 because O'Leary is not a customer of public enterprise services. The City maintains that the anti-discrimination principle embodied in N.C. Gen. Stat. § 160A-314 as enunciated under our case law protects only customers of public enterprise services, not service providers, and therefore, O'Leary lacks standing to maintain a discrimination claim under the substantive law of this statute. We agree.

As explained above, under this statute and our case law interpreting that statute, a city has broad discretion in setting rates and charges for the provision of public enterprise services, with the single limitation being that the city cannot act in an arbitrary or discriminatory manner in setting such rates and charges or in providing such services. *Smith Chapel*, 350 N.C. at 816, 517 S.E.2d at 881; *City of Wilson*, 94 N.C. App. at 120, 379 S.E.2d at 714. As the City points out, the statute at issue, N.C. Gen. Stat. § 160A-314, and the line of cases establishing that statute's non-discrimination principle focus entirely on the discriminatory effect of a city's rate structure on the customer or consumer. *See Mead Corp.*, 238 N.C. at 462, 78 S.E.2d at 298 ("There must be no unreasonable discrimination between *those receiving* the same kind and degree of service." (emphasis added)); *Modern Cleaners*, 34 N.C. App. at 149, 237 S.E.2d at 486 ("[T]he statute must be read as a codification of the general rule that a city has the right to classify *consumers* under *reasonable* classifications based upon such factors as the cost of service . . . or any other matter which presents a substantial difference as a ground of distinction." (first emphasis added) (internal quotation marks and citation omitted)); *Wall*, 41 N.C. App. at 659, 255 S.E.2d at 745 ("Numerous cases have recognized the rule that the statutory authority of a city to

fix and enforce rates for public services furnished by it and to classify its customers is not a license to discriminate *among customers* of essentially the same character and services." (emphasis added)). Given this authority, we must construe the statute and the cases interpreting that statute as conferring a claim for discrimination only on those consumers or customers who are adversely affected by a city's differing rate structure or disparate provision of services.

As the City points out, the crux of plaintiffs' arguments in the present case center on the alleged "dual rate structure" that plaintiffs contend is effected by the City's policy of reimbursing disposal fees associated with supplemental collection to Republic only. Plaintiffs' argument under the statute ultimately contends the City is treating similarly situated multi-family complexes differently by paying for the supplemental collection disposal fees for those complexes who hire Republic and not those who hire another supplemental collection provider, as those complexes who choose to hire a supplemental collection provider other than Republic are, in effect, forced to pay for disposal fees twice, having already paid the City the annual fee for all disposal and then having to pay again for disposal fees the City refuses to reimburse to the supplemental collection provider.

However, as the City correctly contends, these arguments do not pertain to O'Leary. O'Leary is not assessed an annual disposal fee by the City, and O'Leary is not a customer or consumer for whom the City provides solid waste services. Thus, O'Leary cannot be injured by the City's alleged discriminatory dual rate structure under the provisions of N.C. Gen. Stat. § 160A-314. Although O'Leary contends that it is injured by the City's reimbursement policy because the City's policy prevents it from effectively competing in the market for supplemental collection services, such is not the requisite legal position for standing under N.C. Gen. Stat. § 160A-314. Accordingly, we fail to see how O'Leary can demonstrate it has standing to maintain a discrimination claim under N.C. Gen. Stat. § 160A-314, and the trial court erred in failing to grant the City's motion to dismiss that claim with respect to O'Leary for lack of standing.

The City also contends that Cedar Greene lacks standing to maintain a discrimination claim under N.C. Gen. Stat. § 160A-314 because Cedar Greene cannot demonstrate an injury in fact. The City maintains that because Cedar Greene currently benefits from the City's reimbursement policy by hiring Republic for supplemental collection services, Cedar Greene cannot show it has suffered an injury in fact. The City's arguments, however, are misguided.

The City recognizes that Cedar Greene is a customer under the public enterprise statute at issue in this case. In viewing the record in the light most favorable to Cedar Greene, we must conclude Cedar Greene has demonstrated an immediate or threatened injury by the City's actions. Considering the allegations in Cedar Greene's complaint as true, as a result of the City's policy of reimbursing only Republic for disposal of supplemental solid waste collected from multi-family complexes, Cedar Greene is faced with the choice of either losing the benefit of a portion of the disposal fee it pays to the City each year for the disposal of all solid waste collected from Cedar Greene Apartments and, in effect, paying twice for such disposal if it hires O'Leary for supplemental collection, or accepting the rates for supplemental collection service charged by Republic, which are higher than those of O'Leary, thereby preventing Cedar Greene from obtaining monetary savings in the collection and disposal of its supplemental solid waste. The fact that Cedar Greene has not already suffered either alleged monetary loss is inapposite for standing purposes, since "a showing of immediate or threatened injury will suffice for purposes of standing." *Mangum*, 362 N.C. at 643, 669 S.E.2d at 282 (internal quotation marks and citation omitted). Accordingly, because Cedar Greene has shown a threatened injury by the City's alleged discriminatory policy in the provision of disposal of supplemental solid waste collected from Cedar Greene Apartments, Cedar Greene has demonstrated the requisite standing to maintain the present discrimination action under N.C. Gen. Stat. § 160A-314.

## C. *Discriminatory Provision of Services*

**[2]** We next consider the City's argument that Cedar Greene cannot meet its burden of showing a violation by the City of N.C. Gen. Stat. § 160A-314, and therefore, the trial court erred both in granting summary judgment in favor of plaintiffs and in denying summary judgment in favor of the City. On appeal from an order granting or denying summary judgment, our standard of review is *de novo. Baum v. John R. Poore Builder, Inc.*, 183 N.C. App. 75, 80, 643 S.E.2d 607, 610 (2007).

> The standard for granting summary judgment is well established. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

*Crocker v. Roethling*, 363 N.C. 140, 142, 675 S.E.2d 625, 628 (2009) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) [2011]). Where, as here, the parties have filed cross motions for summary judgment, and there is no dispute as to any material fact, " '[w]e need only determine whether summary judgment was properly entered in plaintiffs' favor, or conversely should have been entered in favor of defendant.' " *McDowell v. Randolph Cty.*, 186 N.C. App. 17, 20, 649 S.E.2d 920, 923 (2007) (alteration in original) (quoting *Geitner v. Mullins*, 182 N.C. App. 585, 589, 643 S.E.2d 435, 438 (2007)).

As noted previously, Cedar Greene presents the argument that the effect of the City's reimbursement policy is to create a dual rate structure which results in higher disposal costs for certain customers who choose not to hire Republic, the City's preferred contractor. Plaintiffs liken the facts of this case to a line of prior cases before this Court finding a city's rate structure to be discriminatory under the statute.

The first of these cases is *Town of Taylorsville v. Modern Cleaners*, 34 N.C. App. 146, 237 S.E.2d 484 (1977). In *Modern Cleaners*, the Town of Taylorsville had established a different rate scale for customers of both sewer and water services and customers of sewer-only service. *Id.* at 147, 237 S.E.2d at 485. Under the rate scale at issue in *Modern Cleaners*, charges for sewer service were approximately fifteen percent higher for customers of sewer-only service than for customers of both sewer and water services. *Id.* The defendant in that case, a dry cleaning, laundry, and washerette business, was the only customer of the town's sewer-only service. *Id.* Upon review of such a rate scale, this Court noted the evidence in that case revealed there existed no difference in the type of service provided nor in the cost of providing sewer services to customers of sewer-only service versus both sewer and water services. *Id.* at 149, 237 S.E.2d at 486. Thus, we held the town's policy of charging a different rate for the same service to different customers was discriminatory in violation of its statutory rate-setting authority. *Id.*

Similarly, in *Wall v. City of Durham*, 41 N.C. App. 649, 255 S.E.2d 739 (1979), this Court reviewed the City of Durham's "decapping" policy, a procedure utilized by the city to calculate water usage rates for certain apartment complexes. Under the decapping policy at issue in *Wall*, "the water usage shown by the meter [was] divided by the number of apartments served through the meter; then the water and sewer charge for the quantity resulting from this division [was] calculated; and, finally, this amount [was] multiplied by the number of

apartments served through the meter." *Id.* at 652, 255 S.E.2d at 741. This Court noted the decapping policy resulted in higher charges for water services to customers living in apartment complexes subject to the policy versus other customers not subject to such a policy who consumed an identical quantity of the same service. *Id.* at 659, 255 S.E.2d at 745. Accordingly, we ruled such a policy was discriminatory in violation of the statute. *Id.* at 659-60, 255 S.E.2d at 745.

Likewise, in *Cabarrus County v. City of Charlotte*, 71 N.C. App. 192, 321 S.E.2d 476 (1984), the City of Charlotte operated a sanitary landfill located in Cabarrus County and charged a set fee schedule for all users of the landfill. *Id.* at 192-93, 321 S.E.2d at 477-78. In response to the city's fee schedule, Cabarrus County enacted an ordinance providing that residents of Cabarrus County would not be required to pay a fee for disposal of solid waste in the county's landfills. *Id.* at 193, 321 S.E.2d at 478. Upon review of the county's ordinance, this Court held that the county's ordinance creating differing fee schedules for disposal of solid waste based on residence was arbitrary and discriminatory where the same kind of service was being provided to all customers. *Id.* at 194-95, 321 S.E.2d at 479.

Finally, in *Ricks v. Town of Selma*, 99 N.C. App. 82, 392 S.E.2d 437 (1990), the Town of Selma established a disparate water and sewer service rate structure for multiple-unit establishments. Under the Town of Selma's rate structure, a customer who used both water and sewer service paid one flat fee for each service and a usage rate for each service. *Id.* at 87, 392 S.E.2d at 440. However, a customer who used only one of the services paid one flat fee for the service received, a usage rate for the service received, and for the service available but not received, one flat fee for each unit in the establishment. *Id.* at 86-87, 392 S.E.2d at 440. This Court held that the Town of Selma could properly charge an availability fee for services made available by the town but not used, but such availability fee could not be arbitrary and could not coerce customers to use the town's service. *Id.* In *Ricks*, the town's rate structure resulted in a differing fee for those customers using both services, who paid a single flat fee, versus those customers using only one service, who were required to pay the same fee but on a per unit basis rather than once. Thus, we held such a rate structure was discriminatory in violation of the statute. *Id.* at 87-88, 392 S.E.2d at 440-41. Here, however, unlike *Ricks*, we fail to see how the fact that the City provides reimbursement to Republic for disposal costs associated with supplemental collection coerces any multi-family complex, including Cedar Greene,

into contracting for supplemental collection service in the first instance.

In addition, unlike *Modern Cleaners, Wall, Cabarrus County,* and *Ricks,* the City has not established a differing rate structure for customers of solid waste services. Rather, as the City argues, it currently charges the same disposal fee, $27 per unit per year, to all multi-family complexes, regardless of their need for supplemental collection. In accordance with that fee, all complexes have equal opportunity to receive the same service provided by the City. The resulting difference in costs for supplemental collection and disposal, about which Cedar Greene presently complains, results solely from the decisions by the complex to hire or not a service provider for supplemental collection and if so, which service provider to hire.

Although the City's reimbursement policy with its preferred contractor may play a factor in a complex's decision-making process regarding which supplemental collection provider to hire, the decision whether to contract for supplemental collection services at all and with whom still remains with the complex, and any resulting differences are a product of the complex's decision. If a complex chooses to hire O'Leary or some other supplemental collection service provider rather than Republic, the City's policy of charging an annual disposal fee and reimbursing its preferred contractor pursuant to its contractual obligation does not become a discriminatory "dual rate structure." Under the City's current policy, all complexes who make the same decision, whether to hire Republic or to hire O'Leary or some other supplemental collection service provider, pay the same rate. In *Modern Cleaners, Wall, Cabarrus County,* and *Ricks,* this Court found the respective municipalities' rate structures to be discriminatory because the direct actions of the municipality caused similarly situated customers to pay differing rates. In those cases, no action or decision by the customer caused the resulting rate or service disparities with respect to the specific service being provided by the City. Such is not the case here, where the City's policy makes no differentiation among similarly situated multi-family complexes in the provision of collection and disposal of solid waste.

Notably, the reimbursement policy at issue deals directly with the supplemental collection service provider, not the individual multi-family complexes. Rather than being a product of an arbitrary rate structure or discriminatory provision of services to customers, the reimbursement of disposal fees to supplemental collection service

providers is limited only by the City's contractual agreement with Republic—a contractual agreement for which the City announced the guidelines and accepted competing bids from six different service providers, not including O'Leary. As the City properly contends, by contracting with one service provider and providing that service equally to all customers, the City has not exceeded its authority under N.C. Gen. Stat. § 160A-314.

To the extent Cedar Greene argues the City's calculation of the $27 annual disposal fee is too high and that the City is profiting from the unused portion of the annual disposal fee, such arguments are inapposite under their statutory discrimination claim, which concerns only arbitrary or discriminatory action either in setting rates or in the provision of public enterprise services. Cedar Greene has failed to show how the City's arithmetic in setting the annual disposal fee is arbitrary or discriminatory. Further, to the extent Cedar Greene maintains the City's policy stifles market competition in the provision of supplemental collection services or creates an effective monopoly for Republic, such is not a proper legal position for proceeding with a discrimination claim under the public enterprise statutes.

Under these facts, we fail to see how the City's chosen method of contracting with a single service provider for collection and disposal of solid waste, and providing the same uniform terms of that service to all multi-family complexes, results in the arbitrary or discriminatory provision of solid waste services or the rates charged therefor. Specifically, Cedar Greene has failed to show how it is being treated differently by the City from other similarly situated multi-family complexes, all of which pay the same annual disposal fee and have access to the same provision of services by the City. Accordingly, we hold the trial court erred in granting summary judgment in favor of Cedar Greene on its discrimination claim under N.C. Gen. Stat. § 160A-314, and the trial court should have granted summary judgment in favor of the City on that issue. In light of this holding, we need not address the City's remaining argument concerning the propriety of the trial court's injunctive remedy.

Upon ruling that the City's policy was discriminatory under the statute at issue, the trial court made no ruling on plaintiffs' remaining claim under the equal protection clause of the North Carolina Constitution. Because the trial court made no ruling on plaintiffs' constitutional claim in the judgment from which the City presently appeals, any such argument as to that issue is not properly before this Court. N.C. R. App. P. 10(a) (2012); *see Searles v. Searles*, 100 N.C.

App. 723, 725, 398 S.E.2d 55, 56 (1990) (holding this Court is without authority to entertain an appeal where there has been no entry of judgment on the issue or claim being appealed). Having reversed the trial court's ruling on the statutory claim, we must therefore remand the cause back to the trial court for further proceedings on plaintiffs' constitutional claim.

### III.  Conclusion

We hold that O'Leary, a supplemental collection service provider, has failed to demonstrate the requisite standing to maintain a discrimination claim under N.C. Gen. Stat. § 160A-314(a), in light of our case law interpreting that claim in favor of customers or consumers of public enterprise services. Thus, the trial court erred in failing to grant the City's motion to dismiss the statutory discrimination claim with respect to O'Leary. However, Cedar Greene has shown a threatened financial injury by the City's alleged discriminatory reimbursement policy, and therefore, as a consumer or customer of the City's solid waste services, Cedar Greene has demonstrated sufficient standing to maintain a discrimination claim under N.C. Gen. Stat. § 160A-314. Thus, the trial court did not err in failing to grant the City's motion to dismiss the statutory discrimination claim with respect to Cedar Greene.

However, on the undisputed facts of this case, we fail to see how the City's reimbursement policy treats Cedar Greene differently from other multi-family complexes in the provision of solid waste disposal services. Accordingly, we hold the trial court erred in granting summary judgment in favor of plaintiffs on their statutory discrimination claim. That judgment is therefore reversed.

Because the trial court made no ruling on plaintiffs' remaining claim under the equal protection clause of the North Carolina Constitution, we must remand the cause back to the trial court for further proceedings on plaintiffs' remaining constitutional claim.

Reversed and remanded.

Judge BRYANT concurs.

Judge CALABRIA dissents.

CALABRIA, Judge, dissenting.

I concur with the majority that plaintiff Cedar Greene, LLC ("Cedar Greene") has standing to maintain a discrimination claim pursuant to N.C. Gen. Stat. § 160A-314. However, I disagree with the majority that O'Leary Group Waste Systems, LLC ("O'Leary") lacks standing. Therefore, the trial court properly granted plaintiffs' motion for summary judgment on their statutory discrimination claim. In addition, because the court found that the city exceeded its authority by setting rates and classifying customers under N.C. Gen. Stat. § 160A-314, the trial court properly decided it was unnecessary to address plaintiffs' Equal Protection claim and made no ruling in that regard. For these reasons, I respectfully dissent.

## I. Standing

The majority concludes that O'Leary is not a proper party and does not have standing because O'Leary is not a customer or consumer for whom the City provides solid waste services. The majority also concludes that N.C. Gen. Stat. § 160A-314 protects only customers, not service providers, by citing cases involving customers. Although the cases cited by the majority involved customers, the cases did not limit the application of N.C. Gen. Stat. § 160A-314(a) to *only* customers. In *Utilities Com. v. Mead Corp.*, 238 N.C. 451, 464, 78 S.E.2d 290, 299 (1953), the Court held "when the dealings between [a parent company and its subsidiary] affect the rights of others," the power company could not discriminate among customers. However, the Court said nothing to suggest that discrimination among service providers is permissible. *Id. See also Town of Taylorsville v. Modern Cleaners*, 34 N.C. App. 146, 149, 237 S.E.2d 484, 486 (1977) (Holding that "a city has 'the right to classify consumers' " but included no language to suggest the statute applies exclusively to consumers) (citation omitted); *Wall v. City of Durham*, 41 N.C. App. 649, 659, 255 S.E.2d 739, 745 (1979)(Recognizing that the statute does not grant cities "a license to discriminate among customers," but not establishing that a city could discriminate among service providers). In addition, the language of the subsection of the statute at issue does not address customers at all, but the services provided. *See* N.C. Gen. Stat. § 160A-314(a) (2011) ("Schedules of rents, rates, fees, charges, and penalties *may vary according to classes of service*[.]" (emphasis added)). The law does not explicitly limit discrimination solely to customers, but instead provides guidelines that different rates must be justified by a difference in the class of service.

Since the law is not restricted solely to customers, O'Leary's standing depends on whether it meets the criteria for standing. The majority cites the federal standard for standing found in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 364 (1992), cited by this Court in *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005) and *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002). However, our Supreme Court in *Goldston v. State*, 361 N.C. 26, 637 S.E.2d 876 (2006) and *Mangum v. Raleigh Bd. of Adjust.*, 362 N.C. 640, 669 S.E.2d 279 (2008) set a different standard. The Court in *Goldston* specifically found that while the federal standard

> can be instructive as to general principles . . . and for comparative analysis, the nuts and bolts of North Carolina standing doctrine are not coincident with federal standing doctrine. *Compare Piedmont Canteen Serv., Inc. v. Johnson*, 256 N.C. 155, 166, 123 S.E.2d 582, 589 (1962) ("Only those persons may call into question the validity of a statute who have been *injuriously affected* thereby in their persons, property or constitutional rights." (emphasis added)), *with Lujan v. Defenders of Wildlife*, 504 U.S. at 560, 119 L.Ed.2d at 364 (noting that one of the three elements of federal standing is an " 'injury in fact' " that is "concrete and particularized").

361 N.C. at 35, 637 S.E.2d at 882.

When determining standing, the question for the Court to decide "is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation[s] of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " *Mangum*, 362 N.C. at 642, 669 S.E.2d at 282 (citations omitted). A party is not required to show that an injury has already occurred, but that an injury is *threatened or imminent. Id.* at 642-43, 669 S.E.2d at 282 (emphasis added).

In the instant case, the City of Charlotte refuses to reimburse Disposal Fees incurred by O'Leary for Supplemental Collection. Therefore, if O'Leary provides Supplemental Collection for Multi-Family Complexes, it must either absorb the cost of the Disposal Fees or charge their customers higher rates. Such a development directly interferes with O'Leary's business. Cedar Greene, as a potential cus-

tomer, chose to utilize Republic instead of O'Leary due to the disparity in rates directly caused by the City's policy. This loss of business constituted a threatened or imminent injury to O'Leary's business, under *Goldston* and *Mangum*. Therefore, O'Leary has standing to maintain a claim of discrimination since the City of Charlotte's policy meets the criteria of a threatened or imminent injury under *Goldston* and *Mangum*.

## II.  Equal Protection

Finally, the trial court properly did not address plaintiffs' Equal Protection claim in its 14 December 2011 order. The order itself discussed the statutory provisions, and the trial court found for the plaintiffs based on N.C. Gen. Stat. § 160A-314. The trial court found that the City's policy exceeded its authority by setting rates and classifying customers under N.C. Gen. Stat. § 160A-314. *See Cabarrus County v. City of Charlotte*, 71 N.C. App. 192, 195, 321 S.E.2d 476, 479 (1984) ("There must be substantial differences in service or conditions to justify differences in rates. There must be no unreasonable discrimination between those receiving the same kind and degree of service."); *Mead Corp.*, 238 N.C. at 465, 78 S.E.2d at 300 ("Classification must be based on substantial difference.").

The City, through its representative Carl Terrell, has admitted that the solid waste disposal service provided, whether by Republic, O'Leary, or another disposal service, is effectively the same. The identity of the provider does not indicate a different class of service. However, in refusing to pay any provider other than Republic, the City effectively subjects Multi-Family Complexes to pay elevated rates for their solid waste disposal. If a Multi-Family Complex hires Republic, they are subject to Republic's higher rates. If a Multi-Family Complex hires a different solid waste disposal service, they are subject to the Disposal Fees. In its order, the trial court found that the City's policy only reimbursed disposal fees to those Multi-Family Complexes that hired Republic to provide Supplemental Collection. The trial court determined that the City's policy constituted "unlawful, unreasonable, and arbitrary discrimination in the provision of a public enterprise service and rates charged for such service" violated N.C. Gen. Stat. § 160A-314. I agree.

In *Cabarrus County*, a case also based on N.C. Gen. Stat. § 160A-314, this Court held that if there are "sound statutory grounds" to substantiate a holding, the Court need not go further and address an

Equal Protection claim. 71 N.C. App. at 195, 321 S.E.2d at 479. In this case, the trial court properly based its order on the sound statutory grounds of the claim. Therefore, it was·unnecessary for the trial court to address the Equal Protection claim. *Id.* I would affirm the trial court's decision.

### III.  Conclusion

The majority correctly holds that plaintiff Cedar Greene has standing but mistakenly concludes that plaintiff O'Leary does not have standing. Our state Supreme Court has articulated the standard for the state in *Goldston* and again in *Mangum*. Therefore, O'Leary does have standing and the trial court also properly granted plaintiffs' motion for summary judgment because the court found that the city exceeded its authority by setting rates and classifying customers under N.C. Gen. Stat. § 160A-314.

Under the precedent of *Cabarrus County*, I would affirm the trial court's decision that it was unnecessary to address plaintiffs' Equal Protection claim and also affirm that he made no ruling in that regard.